**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>JESUS SEGUINOT | No. 3:22-cr-76 (SRU) |

**ORDER ON MOTION FOR BAIL PENDING APPEAL**

Jesus Seguinot ("Seguinot") moves under 18 U.S.C. §§ 3141(b) and 3143(b) for bail pending appeal of his criminal conviction. Doc. No. 704. The government opposes Seguinot's motion. Doc. No. 711.

For the following reasons, I **deny** Seguinot's motion for bail pending appeal, doc. no. 704.

I.    **Background**

On April 6, 2023, an eight-count superseding indictment charged Seguinot with one count of conspiracy to distribute and to possess with intent to distribute at least 40 grams of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(vi). Doc. No. 96 at 1-2. Count eight charged Seguinot with possession with intent to distribute and distribution of at least 40 grams of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) and 18 U.S.C. § 2. *Id*. at 5.

On December 19, 2024, a jury convicted Seguinot of count one, conspiracy to distribute and possess with intent to distribute at least 40 grams of a mixture or substance containing a detectible amount of fentanyl. Doc. No. 499 at 2. *See* Doc. No. 96 at 1-2; 21 U.S.C. §§ 846,

841(a)(1), 841(b)(1)(B)(vi).  The jury found Seguinot not guilty of count eight, possession with intent to distribute and distribution of at least 40 grams of a mixture and substance containing a detectable amount of fentanyl.  Doc. No. 499 at 6. *See* Doc. No. 96 at 5; 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(vi); 18 U.S.C. § 2.

Prior to trial, District Judge Jeffrey A. Meyer ordered Seguinot released on bail on June 22, 2023.  Doc. No. 179.  After his December 2024 conviction, the government moved for presentence detention.  Doc. Nos. 508, 509.  Magistrate Judge Maria Garica granted that motion on January 3, 2026 and remanded Seguinot to the custody of "the U.S. Marshals Service pending his sentencing."  Doc. No. 514 at 1, 4.

On July 31, 2025, I sentenced Seguinot to 78 months' incarceration and 4 years' supervised release.  Doc. No. 620.  Seguinot filed a notice of appeal the same day.  Doc. No. 621.  On December 23, 2025, the government moved for the Second Circuit to hold Seguinot's appeal in abeyance because of the anticipated appeal of his co-defendant, Luis Salaman ("Salaman"), and the potential consolidation of their appeals.  *See generally United States v. Salaman (Seguinot)*, No. 25-1879 ("*Seguinot Appeal*"), Doc. No. 35.2.  On January 12, 2026, the Second Circuit stayed Seguinot's appeal over his objection.  *Seguinot Appeal*, Doc. Nos. 37.2, 41.1.  The Second Circuit lifted the stay on Seguinot's appeal and consolidated Seguinot's and Salaman's appeals on May 21, 2026.  *Seguinot Appeal*, Doc. Nos. 47.1, 48.1.

Seguinot is currently in Bureau of Prisons ("BOP") custody at FCI Otisville.[1]  Doc. No. 704 at 7.

---

[1] *See also* Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc (Reg. No. 26292-014) (last visited July 13, 2026).  I may take judicial notice of content on the BOP's Inmate Locator website.  *See United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information).

## II.    Standard of Review

A court must order a defendant be released or detained "pending appeal of conviction or sentence."  18 U.S.C. § 3141(b).  Section 3143 sets forth the circumstances under which a judge may release a defendant pending sentence or appeal.

Section 3143(b)(2) requires mandatory detention of a defendant who has been sentenced and has filed an appeal if the defendant is found guilty of any of the following offenses:

> (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
> (B) an offense for which the maximum sentence is life imprisonment or death;
> (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46[.]

18 U.S.C. §§ 3142(f)(1)(A)-(C); *id.* § 3143(b)(2) ("The judicial officer shall order that a person who has been found guilty of an offense in a case described in [sections 3142(f)(1)(A), (B), or (C)] and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.").  However, under section 3145:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145.  *See also United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) ("[A]n exception [to section 3143(b)(2)] permits release of mandatory detainees who meet the requirements for release under section 3143(b)(1), and 'if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.'") (quoting 18 U.S.C. § 3145(c)).

3

Section 3143(b)(1) instructs judges to detain a defendant "found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal," unless the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). If the court "makes such findings," the court "shall order the release of the person." *Id.*

Therefore, to release a defendant subject to mandatory detention pending appeal under section 3143(b)(2), a court must find that: (1) clear and convincing evidence demonstrates the person "is not likely to flee or pose a danger to the safety of any person or the community if released;" (2) the appeal is not a delay tactic and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence; and (3) there are "exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. §§ 3143(b)(1), 3145.

### III.    Discussion

Seguinot was convicted of "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act" and is subject to mandatory detention pending appeal unless he meets the requirements of both sections 3143(b)(1) and 3145. 18 U.S.C. § 3142(f)(1)(C). *See* Doc. No. 620 (showing Seguinot was adjudicated guilty of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(B)(vi), and 846); 21 U.S.C. § 841(b)(l)(B)(vi) (prescribing a maximum sentence of 40 years).

In his motion for bail pending appeal, Seguinot argues that he meets the standards justifying his release in sections 3143(b)(1) and 3145 because:  (1) he does not pose a flight risk or a danger to the community; (2) his appeal raises substantial questions of law; and (3) exceptional reasons justify his release.  *See generally* Doc. No. 704, 713.  The government disagrees, arguing that:  (1) Seguinot fails to show that he is not a flight risk or danger to the community; (2) his Confrontation Clause claim is not a substantial question of law; and (3) he has not articulated exceptional reasons for his release.  *See generally* Doc. No. 711.

> a.  Whether Seguinot clearly and convincingly demonstrates he is not likely to flee or pose a danger to the safety of any person or the community if released

Seguinot points to his strong ties to New Haven and his history of appearing in court while released to argue that he is not a flight risk.  Doc. No. 704 at 7 (noting that his mother, partner, and children all live in New Haven).  Further, Seguinot contends that he would not pose a danger to the community if released because he "complied with all of his pretrial conditions, engaged in extensive mental health and substance use treatment, and secured employment."  *Id.* (stating that Seguinot has not incurred any disciplinary tickets in BOP custody or during his eight-month presentencing incarceration).

The government responds Seguinot's past "poor performance on supervision" proves his risk of flight.  Doc. No. 711 at 16.  Additionally, the government asserts that Seguinot's family, employment, treatment, and prior incarceration "did not [previously] deter him from reoffending."  Doc. No. 711 at 15.  The government also notes that "Seguinot continues to pose a danger to the cooperating witnesses who testified against him at trial."  *Id.*

Seguinot clearly and convincingly demonstrates he is not a flight risk because of his close ties to family residing in New Haven and his record of complying with court appearances. However, I cannot find by clear and convincing evidence that he is not a danger to the

community because of his social media posts about cooperating witnesses.  During trial, I instructed the parties "that they should not be interacting with the witnesses."  Doc. No. 556 at 201-202.  Despite my admonition, Seguinot posted a picture of a cooperating witness on Facebook referring to him as "a bastard" who testified at Salaman's trial.  Doc. No. 619 at 19.  In a separate Facebook post, Seguinot identified another cooperating witness as the government's "star witness."  *Id.*

Seguinot's social media posts prevent me from finding that he does not pose a danger to the cooperating witnesses who testified in his trial.  Therefore, I conclude that Seguinot has not clearly and convincingly shown that he does not "pose a danger to the safety of any other person or the community if released," as required by sections 3143(b)(1) and 3145.  18 U.S.C. §§ 3143(b)(1), 3145.

      b.  <u>Whether Seguinot's appeal raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence</u>

Next, Seguinot contends that his appeal "raises several substantial questions of law," including whether allowing Ismael Heredia ("Heredia") to testify remotely due to his hospitalization violated Seguinot's right to confront witnesses under the Sixth Amendment.  Doc. No. 704 at 8.  Seguinot argues that the likely result of a successful appeal is a "vacatur of his conviction and a new trial."  *Id.* at 13.  The government counters that my ruling allowing Heredia to testify remotely was consistent with *Gigante* and did not compromise or otherwise affect Seguinot's ability to cross-examine Heredia.  Doc. No. 711 at 17-18.

Under the Sixth Amendment to the United States Constitution, Seguinot had the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  However, the Confrontation Clause does not guarantee "the *absolute* right to a face-to-face meeting with

witnesses against them at trial." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (emphasis in original); *id.* at 845 ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.").

"[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850; *id.* at 852 ("[U]se of the one-way closed circuit television procedure, where necessary to further an important state interest, does not impinge upon truth-seeking or symbolic purposes of the Confrontation Clause.").

The Second Circuit followed the Supreme Court's Confrontation Clause precedent in *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999). In *Gigante*, the Second Circuit held allowing a cooperating witness to testify "via closed-circuit television due to his illness and concomitant infirmity" did not violate Gigante's Sixth Amendment rights because the testimony "preserved all [the] characteristics of in-court testimony." 166 F.3d at 79-80 (noting the cooperating witness was in the federal witness protection program and "was in the final stages of an inoperable, fatal cancer"). Further, the Second Circuit concluded that *Craig's* requirement of furthering "an important public policy" was unnecessary because the district court "employed a two-way system that preserved [] face-to-face confrontation." *Id.* at 80-81 (stating that the cooperating witness was sworn, subject to a full cross-examination, and testified in full view of the jury, court, the defense counsel, and the defendant).

"Upon a finding of exceptional circumstances, . . . a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." *Gigante*,

166 F.3d at 81.  The Supreme Court and Second Circuit have not overturned that central holding from *Gigante* and, therefore, that holding remains good law.[2]

My straightforward application of *Gigante* to Heredia's testimony against Seguinot does not raise a substantial question of law or fact.  *Cf. United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (describing a substantial question as one that is "close" or "that very well could be decided the other way").  In allowing Heredia to testify via a two-way Zoom call, I held that exceptional circumstances existed preventing Heredia's direct testimony in court.  Doc. No. 651 at 33 ("I believe that there are extraordinary circumstances here that prevent [Heredia's] direct testimony in court.").  After Heredia's testimony was delayed for several days due to his ongoing hospitalization, I concluded that Heredia was in "significant pain caused by pancreatitis" that worsened when he moved.  *Id.* at 34 ("The doctor was not even certain he could be moved into a wheelchair, for example.").  I noted that a "treating physician on the record indicat[ed] that Mr. Heredia [was] not in a condition, in the doctor's opinion, to be brought to court to testify."  *Id.* The exceptional circumstances also included that Heredia was a key witness "for both sides," that the court was facing "a significant time pressure" due to at least one juror's holiday travel, and that extending the trial past the anticipated dates would risk losing the jury.  *Id.* at 35-36.  I directly applied "the extraordinary circumstances test [from] *Gigante*" and that Heredia's two-way Zoom testimony would not violate Seguinot's Sixth Amendment right to confrontation.  *Id.* at 36.

---

[2] The Second Circuit applied *Gigante* in allowing remote testimony at least twice more.  *United States v. Won*, 2024 WL 827774, *2-3 (2d Cir. 2024) (citing exceptional circumstances due to the COVID-19 pandemic); *United States v. Patterson*, 2022 WL 17825627, *4-5 (2d Cir. 2022) (same as previous) ("The court found that the need to prevent serious illness and death and to protect his family, including his 83-year-old mother-in-law for whom he was the primary caretaker, constituted exceptional circumstances warranting use of two-way video.").

I disagree with Seguinot's assertion that my application of *Gigante* "impermissibly expanded [*Gigante's*] reach." Doc. No. 704 at 11. Heredia's inability to testify due to medical reasons mirrored that of the cooperating witness in *Gigante*. Further, Seguinot was able to confront Heredia under almost identical circumstances as those in *Gigante*: Heredia was sworn in; he was subject to a full cross-examination; and he testified in full view of the jury, court, defense counsel, and Seguinot. *Gigante*, 166 F.3d at 80. Seguinot refers to the "joint exigencies" faced by both Gigante and the testifying witness as what "satisfied the [exceptional circumstances] requirement." Doc. No. 704 at 11-12 (quoting *Gigante*, 166 F.3d at 81). The Second Circuit mentioned those joint exigencies in the context of describing and ultimately concurring with the trial court's conclusion that "deposing the witness [was] not appropriate" and "the closed-circuit presentation of Savino's testimony afforded greater protection of Gigante's confrontation rights than would have been provided by a Rule 15 deposition." *Id.* at 81. In allowing Heredia to testify via two-way Zoom call, I did not reach the issue of whether a Rule 15 deposition would afford similar protection of Seguinot's right to confrontation.[3] My ruling that Heredia's critical medical condition and imminent time constraints on the jury were exceptional circumstances neither expanded nor contradicted *Gigante*.

For the above reasons, I conclude that Seguinot's appeal does not raise a substantial question of law or fact and instead requests the Second Circuit to overturn or distinguish its ruling in *Gigante*. However, I acknowledge the possibility that the Second Circuit may reverse

---

[3] As discussed during the motion hearing on the government's motion for remote testimony, doc. no. 479, the government initially filed a motion to depose Heredia pursuant to Rule 15, doc. no. 468. *See* Doc. No. 651 at 24-30. Seguinot did not agree to a Rule 15 deposition motion and did not indicate his preference on the record for Heredia testifying via Zoom or a Rule 15 deposition. *See* Doc. No. 556 at 12, 25. I denied the government's motion as moot without prejudice because it appeared Heredia would be able to testify in person the following morning. *Id.* at 236-37.

9

Seguinot's conviction and grant Seguinot a new trial if the Second Circuit abandons its *Gigante* holding in Seguinot's appeal.

Accordingly, Seguinot does not meet the requirements for release pending appeal under section 3143(b)(1).

c.  <u>Whether Seguinot shows exceptional reasons why detention is not appropriate</u>

In addition to satisfying the criteria under section 3143(b)(1), Seguinot must also demonstrate exceptional reasons why detention is not appropriate in his case.  *See* 18 U.S.C. § 3145(c) (requiring a defendant to clearly show that "there are exceptional reasons why" their detention is inappropriate).

Seguinot argues that exceptional reasons exist for his release because of the "unusual legal and factual questions" his appeal raises and because "the government effectively delayed [his] appeal for more than a year by moving to hold the appeal in abeyance."  Doc. No. 713 at 5-6.  The government contends that Seguinot has not identified any "remarkable or uncommon factors" justifying his release and that "[c]onsolidation of appeals by co-defendants in the same criminal case . . . are commonplace and routine."  Doc. No. 711 at 20-21.

"Neither [section 3145] nor case law defines the circumstances which may qualify as exceptional reasons permitting release."  *United States v. DiSomma*, 951 F.2d 494, 497-98 (2d Cir. 1991) (holding exceptional reasons existed because "[t]he element of the crime called into question on appeal is the element of the bail statute that bars release").  "The test under [section] 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'"  *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004) (citing *DiSomma*, 951 F.2d at 497).

10

Courts find exceptional circumstances "where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'" *Lea*, 360 F.3d at 403 (quoting *DiSomma*, 951 F.2d at 497). "[A]n unusual legal or factual question can be sufficient . . . to meet the test." *DiSomma*, 951 F.2d at 497. Further, "a merely substantial question may be sufficient, in the presence of one or more remarkable and uncommon factors," to constitute exceptional reasons. *Id.*

Even assuming that Seguinot meets the requirements under section 3143(b)(1), he does not identify "exceptional reasons" showing his detention is inappropriate. 18 U.S.C. § 3145(c). Specifically, Seguinot fails to identify an unusual legal or factual question underpinning his appeal. Instead, as previously discussed, his main contention on appeal is that the Second Circuit should reconsider its decision in *Gigante*. The reasons for Heredia's remote testimony, such as Heredia's specific medical issue and the time constraints faced at trial, were unique to Seguinot's case. However, allowing a cooperating witness to testify remotely because their health did not permit in court testimony is not legally or factually unique. *United States v. Gigante*, 166 F.3d 75, 81-82 (2d Cir. 1999) (noting a cooperating witness's fatal medical issue was a fact contributing to the exceptional circumstances permitting remote testimony).

Unlike in *DiSomma*, Seguinot is not claiming legal or factual innocence. *DiSomma*, 951 F.2d at 498 (noting that DiSomma "prevailing on appeal may well result in dismissal of the indictment"). Seguinot does not contend that a reversal will result in a dismissed indictment or drastically change his sentencing exposure. Heredia will likely testify in person should Seguinot be granted a new trial due to Heredia's remote testimony.

Finally, although the delay in Seguinot's appeal was not ideal, a roughly five-month stay in and of itself is not "remarkable" or "uncommon." *DiSomma*, 951 F.2d at 497. Federal Rule

11

of Appellate Procedure 3(b)(2) contemplates consolidating appeals, even when parties file "separate timely notices of appeal." Fed. R. App. P. 3(b) ("When two or more parties are entitled to appeal from a district-court judgment or order, and their interests make joinder practicable, they may file a joint notice of appeal. They may then proceed on appeal as a single appellant."). The Second Circuit has held that "consolidation should be considered when savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Chem One, Ltd. v. M/V RICKMERS GENOA*, 660 F.3d 626, 642 (2d Cir. 2011) (internal quotation marks and emphasis omitted) (quoting *Devlin v. Transportation Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)). The Federal Rules of Appellate Procedure plainly contemplate consolidation, and the Second Circuit did not conclude that staying Seguinot's appeal would sacrifice justice. *See id.*; Fed. R. App. P. 3; *United States v. Salaman (Seguinot)*, No. 25-1879 ("*Seguinot Appeal*"), Doc. No. 41.1. Therefore, the approximately five-month stay in Seguinot's appeal is not an exceptional circumstance justifying his release.

Accordingly, Seguinot does not demonstrate exceptional reasons why detention is not appropriate in his case and, therefore, does not meet the requirements for release in section 3145. *See* 18 U.S.C. § 3145(c).

## IV.    Conclusion

For the reasons discussed above, I **deny** Seguinot's motion for bail pending appeal, doc. no. 704.

So ordered.

Dated at Bridgeport, Connecticut, this 13th day of July 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

12